## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROXANNE CROWELLE,** | : | **No. 1:22cv864** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CUMBERLAND-DAUPHIN-** | : | |
| **HARRISBURG TRANSIT AUTHORITY** | : | |
| **d/b/a CAPITAL AREA TRANSIT a/k/a** | : | |
| **"CAT",** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

This is a workplace discrimination action filed by Plaintiff Roxanne Crowelle against her former employer, Defendant Cumberland-Dauphin-Harrisburg Transit Authority d/b/a Capital Area Transit a/k/a "CAT" ("CAT") pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), and the Pennsylvania Human Relations Act, 73 PA. STAT. §§ 951, *et seq.* ("PHRA"). Before the court is a motion for summary judgment filed by the defendant. (Doc. 28). Having been fully briefed, this matter is ripe of a decision.

**Background**

Plaintiff worked as a bus driver for CAT from 2010 until November 25, 2021.[1] (Doc. 30, SOF ¶¶ 1, 56).  She suffers from chronic insomnia and treats with a medical provider for that condition. (Id. ¶ 2).  CAT's attendance records reflect that plaintiff often worked early morning routes and then afternoon and evening routes on that same day ("split shifts"). (Doc. 30, Def. Ex. T, ECF pp. 138-140 (July and August 2021), ECF pp. 142–43 (November 2021)).

Despite suffering from insomnia, plaintiff was able to work as a bus driver with occasional time off.  Pursuant to FMLA, plaintiff's doctor certified her condition and CAT approved intermittent leave in 2019, 2020, and 2021. (Id. ¶¶ 5-7).  Specifically, in the last year of plaintiff's employment with CAT, plaintiff was reapproved for FMLA leave for her insomnia on April 16, 2021, commencing May 28, 2021. (Doc. 34-2, Pl. Exs. D-E, CAT FMLA Approval – Informational Letter)).

CAT's human resources ("HR") employee, Tess Henderson, processed plaintiff's April 2021 FMLA paperwork. (Doc. 34-2, Pl. Ex. F, T. Henderson Dep. 8:6-12).  Plaintiff received an approval letter from Henderson on CAT letterhead.

---

[1] Unless noted otherwise, the court cites to the defendant's statement of material facts ("SOF"), (Doc. 30), for facts which the plaintiff admitted in its response to the SOF, (see Doc. 34-1).  All facts from the record are construed in a light most favorable to plaintiff as the nonmoving party. See Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 187 (3d Cir. 2015)(citation omitted).

(Doc. 34-2, Pl. Ex. E).  Affixed to that letter was a handwritten note from Henderson: "Roxanne, your current FMLA is still in effect until 5/27/21. – This is just showing that you recertified & have been approved through 5/27/22." (Id.; see also Pl. Ex. F, T. Henderson Dep. 14:7-16:11).

Henderson testified that her practice was to place certified FMLA paperwork in an employee-designated file in a locked cabinet, including the paperwork of the plaintiff. (Pl. Ex. F, T. Henderson Dep.11:11-18, 16:2-11, 24:2-6).  CAT's HR department also maintained a spreadsheet showing that the plaintiff had been approved for FMLA leave with a start date of May 27, 2021 and an expiration date of May 26, 2022. (Doc. 34-2, Pl. Ex. J, CAT FMLA Certification Chart).

As alleged, plaintiff then began to experience "a complete HR nightmare." (Doc. 25, Am. Compl. ¶ 37).  Henderson stopped working for the defendant at the end of April 2021. (Doc. 34-2, Pl. Ex. F, T. Henderson Dep. 8:6-12).  CAT also changed its internal policies regarding recertification of FMLA leave in June 2021. (Doc. 30, SOF ¶ 34).  CAT's HR manager, Brianna Holmes, testified that recertification periods were changed from a 12-month period to a 6-month period at that time. (Doc. 34-2, Pl. Ex. G, B. Holmes Dep. 8:12-22, 20:9-22:14).

On Monday, July 5, 2021, plaintiff did not show up for work and did not call off. (Doc. 34-2, Pl. Ex. A, Pl. Dep. 45:7-46:2).  She testified that she believed that

3

she was off for observation of the Independence Day holiday.[2] (Id.).  Plaintiff's

personnel file indicates that she was given a first written warning for being absent

without leave ("AWOL") on that date. (Doc. 34-2, Ex. U).

That same week, on July 8, 2021, plaintiff emailed a different CAT HR

employee, Nicole Hansen, for FMLA paperwork relative to caring for her mother.[3]

(Doc. 30, SOF, Def. Exh. F, ECF p. 46-47). Hansen replied that she would

provide forms that day and indicated to the plaintiff that the due date for her

certification was July 22, 2021. (Id.)  Plaintiff replied that she had already been

recertified and reapproved for her own condition in 2021 and that she was

requesting new leave forms to care for her mother. (Id., ECF p. 46).  In turn,

Hansen responded: "Roxanne, Do you have a copy of your certification for you[r]

own serious health condition?  I looked in your file and we never received the

certification from your doctor back in May? I will send one for you and your

mother." (Id.)  Hansen reiterated in a follow-up: "We do not have your certification

_____

[2] While employed at CAT, plaintiff belonged to the Amalgamated Transit Union, AFL-CIO, Local 1436 ("ATU"). (See Doc. 30, SOF, Def. Ex. P, Stop the Clock Memo, 10/26/2021). On June 15, 2021, CAT and ATU held a management-union meeting. (Id. Def. Exh. R., Mgmt.-Union Meeting Agenda).  During that meeting, ATU addressed having to work on July 5, 2021. (Id.)  Additionally, Holmes, CAT's HR manager, addressed a Driver Fatigue Prevention Program at that meeting. (Id.).  Another HR employee, Nicole Hansen, discussed FMLA recertifications. (Id.)

[3] Plaintiff ultimately did not seek FMLA leave to provide care for her mother. (Doc. 34-2, Pl. Ex. A, Pl. Dep 43:9-44:16).

on file, I do not have a new certification on file for you from your doctor [sic]." (Id. ECF p. 45).

That evening, plaintiff responded to Hansen's emails: "All I can tell you is to check with Tess [Henderson]. I have my [FMLA] approved copies in my hand showing approved through May 27, 2022[.]" (Id.) Hansen then advised the plaintiff that Henderson was no longer employed by CAT and that the HR department did not have a copy of plaintiff's FMLA certification on file. (Id.) Hansen also directed the plaintiff to have her doctor provide a copy of her recent certification. (Id.) Hansen told plaintiff that, otherwise, she would have to recertify. (Id.).

When employees of CAT call off, there are separate designations for paid sick leave and FMLA leave. (Doc. 30, SOF ¶ 15). CAT's attendance records reflect that plaintiff had exhausted her paid sick time as of June 2021. (Doc. 30, SOF, Def. Ex. T, ECF p. 136). Plaintiff's paid vacation time for 2021 had to be selected and scheduled the year prior. (Doc. 34-2, Pl. Ex. A, Pl. Dep. 50:2-51:2). Consequently, under policies in place, plaintiff could not call off and use vacation time. (Id.)

Plaintiff called off on July 22, July 23, July 29, and July 30, 2021, and sought to use FMLA leave for those dates. (Doc. 34-2, Ex. P) Her attendance records reflect that she worked the early morning portion of her split shifts on July

22 and July 29, 2021 before departing the job. (Doc. 30, SOF, Ex. T).  On August 5, 2021, CAT's HR department emailed plaintiff's dispatchers and stated: "As of 07/30/2021, [plaintiff] is no longer qualified for FMLA.  She has been notified." (Doc. 34-2, Ex. O).

On September 17, 2021, plaintiff called off again and sought to use FMLA leave. (Doc. 30, Def. Ex. T, CAT Attendance Records, ECF p. 141).  CAT sent plaintiff a letter that same date, indicating that plaintiff's FMLA eligibility expired on May 27, 2021. (Doc. 34-2, Ex. P).  Further, the correspondence indicated that CAT deemed July 8, 2021 as the date plaintiff requested FMLA leave relative to her own condition, i.e., her insomnia. (Id.)  CAT also reissued plaintiff another FMLA recertification form. (Id.).

On October 7, 2021, CAT's HR manager, Brianna Holmes, left plaintiff a voicemail regarding her FMLA status. (Doc. 30, Def. Ex. M, 10/08/2021 Emails, ECF p. 101).  Plaintiff then emailed Holmes on October 8, 2023, reiterating that her physician certified her condition in April and that defendant's HR department provided plaintiff with an approved copy of certification forms at that time. (Id.)  Holmes responded by forwarding her the email chain from July 2021, recited above, between plaintiff and Nicole Hansen. (Id., ECF p. 98).  Plaintiff responded to Holmes indicating again that plaintiff had requested FMLA forms relative to caring for her mother in July, not for herself. (Id.).  Plaintiff also wrote: "Nicole

[Hansen] had mentioned something regarding not having my [FMLA] on file and I figured it was an oversight from all the administrative changes because in April, HR photocopied from the original forms my physician faxed over and you provided me with an approved copy." (Id.).

Holmes replied once more. (Id., ECF p. 97).  Holmes indicated that she reached out to plaintiff's provider and plaintiff's provider confirmed that FMLA paperwork was completed for plaintiff on April 15, 2021. (Id.)  Holmes reiterated that CAT did not have plaintiff's FMLA paperwork on file and asked plaintiff to send the certification. (Id.)

Emails reflect CAT's internal decision-making at this time. On October 19, 2021, Hansen indicated in an email that plaintiff's personnel issues had been discussed with another individual, ostensibly CAT's counsel. (Doc. 34-2, Pl. Ex. I., ECF p. 84).  Per that dialogue, Hansen pitched to other members of the HR department an idea to "force [plaintiff's] hand" to turn in FMLA documentation, mark her as AWOL, terminate the plaintiff, and state that CAT would consider reinstatement without backpay upon receipt of FMLA certification. (Id.).  Hansen also indicated in the email not to take action against the plaintiff until the following week after an arbitration involving a different matter.[4] (Id.).

---

[4] As indicated in footnote 2, plaintiff was a member of a labor union, ATU, while employed by CAT.  CAT and ATU were subject to a Collective Bargaining Agreement. (Id., Def Ex. AA., CBA).  Article 13 of the applicable CBA sets forth an agreed upon discipline process. (Id., ECF

CAT's HR department continued to deliberate internally.  On October 20, 2021, Holmes emailed Hansen and indicated that plaintiff had not provided the paperwork as requested. (Doc. 34-2, Pl. Exh. S, ECF p. 221).  Holmes also stated: "There is no reason she cannot provide it. I spoke with her provider." (Id.) Hansen continued to correspond with Holmes about pathways to terminating the plaintiff for failure to provide documentation. (Id.)

Plaintiff called off and sought to use FMLA leave on October 21, 22, 25, and 26, 2021. (Doc. 30, SOF, Def. Ex. T, CAT Attendance Records, ECF p. 142). Holmes emailed the plaintiff again on October 25, 2021, and advised the plaintiff that CAT did not have approved FMLA leave on file. (Doc. 34-2, Pl. Ex. I, ECF p. 87).

On October 26, 2021, plaintiff replied to Holmes. (Doc. 30, SOF, Def. Ex. O).  She stated: "I have my [FMLA] papers. I'm not sure why it's necessary to return to my physician requesting what I already requested, received, and passed onto HR, in April." (Id.)  Holmes, in turn, then discussed "a good plan" regarding plaintiff with Hansen outside the email chain, and Hansen confirmed that discussion in an email. (Doc. 34-2, Pl. Ex. I, ECF p. 85-86).

---

p. 168–69). Article 14 sets forth agreed upon attendance and absenteeism policies. (Id., ECF p. 170–72).

From the discussion between CAT's HR employees on October 26, 2021, Holmes then provided notice to the plaintiff of a pre-termination <u>Loudermill</u> hearing scheduled for November 1, 2021.[5] (Doc. 30, SOF, Def. Ex. P).  The purpose of the hearing was to address plaintiff's call-offs for ten (10) workdays from July 22, 2021 to October 26, 2021. (<u>Id.</u>)

Plaintiff attended the <u>Loudermill</u> hearing on November 1, 2021. (Doc. 30, SOF ¶¶ 31-32).  Plaintiff provided Holmes with a copy of her FMLA certification, which was faxed to CAT on April 15, 2021, along with approval documentation from CAT's HR employee Tess Henderson. (<u>Id.</u>, Def. Ex. Q).  As noted above, the April 2021 approval documents indicate that leave taken from May 28, 2021 forward would be considered FMLA leave. (Doc. 34-2, Pl. Ex. D).  Henderson's handwritten note indicates that the certification was valid until May 27, 2022. (<u>Id.</u>, Pl. Ex. E).  CAT's tracking spreadsheet reflected an expiration date of May 26, 2022. (<u>Id.</u> Pl. Ex. J).

CAT then indicated in a post-hearing memo dated November 3, 2021, that plaintiff's call offs on the ten (10) dates in question were "consistent with her approved leave." (Doc. 30, Def. Ex. Q).  The memo also stated: "Attached is new

---

[5] A <u>Loudermill</u> hearing refers to a due process hearing afforded to civil servants and public employees prior to termination. <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532 (1985).

certification paperwork for your health conditions[.] [Y]our certification was approved for 6 months and now you must recertify." (Id.)

In a separate letter to the plaintiff dated November 3, 2021, CAT took the position that plaintiff's FMLA certification expired on October 15, 2021. (Id., Def. Exh. S). CAT also took the position that it would attribute absences from October 15, 2021 to November 2, 2021 as FMLA absences, but implied that future absences would not be considered FMLA leave without recertification. (Id.) CAT provided plaintiff with a recertification deadline of November 17, 2021. (Id.)

On the other hand, emails between Holmes and Hansen on November 2 and 3, 2021, reflect discussions between the two blaming Henderson for the paperwork issues and speculating that Henderson gave plaintiff the original documents. (Doc. 34-2, Pl. Ex. S). Holmes wrote to Hansen: "The confusion lies in that, the fax date at the top of the documents are dated 4/15/21. The letter is dated 4/16/21 but states its for leave beginning 5/28/21. Unsure. All this to say that means all the dates she marked off FMLA there after, are indeed FMLA. [sic]" (Id.). Hansen replied, "Very weird[.]" (Id.) Hansen, however, had been involved in plaintiff's 2020 recertification. (Id., Pl. Ex. C). Hansen had sent plaintiff an FMLA approval letter under CAT's previous one-year recertification period for dates beginning on May 28, 2020. (Id.)

On the date of her <u>Loudermill</u> hearing, November 1, 2021, plaintiff worked for two hours (2) on an early morning route and then for approximately six (6) hours on afternoon and evening routes that same day. (Doc. 30, Def. Ex. T, CAT Attendance Records, ECF p. 142). She worked similar split shifts the remainder of that workweek, until November 5, 2021. (<u>Id.</u>)

The following workweek, however, plaintiff called off on November 8, 9, 10, and 11, 2021. (<u>Id.</u>)  Plaintiff called out using the "sick" designation, not the "FMLA" designation. (<u>Id.</u>, Def. Ex. U, P. Mathis Email 11/17/2021).  Plaintiff explained that if she marked herself out as sick at that time it was because she was told that she did not have FMLA approval in place. (Doc. 34-2, Pl. Ex. A, Pl. Dep. 73:5-14).

CAT subsequently scheduled a second pre-termination hearing for November 17, 2021. (Doc. 30, SOF, Def. Ex. X, P. Mathis Letter).  Per Holmes, CAT's HR manager, plaintiff failed to provide documents at the hearing as to the reasons for her absences from November 8-11, 2021. (<u>Id.</u> Def. Ex. Z). Accordingly, CAT considered plaintiff AWOL on those dates and suspended her. (<u>Id.</u>)  Holmes also provided leave of absence paperwork due back the following week, on the day before Thanksgiving, November 24, 2021. (<u>Id.</u>)  Holmes advised that if the leave of absence paperwork was not returned by that date, plaintiff would be terminated.  (<u>Id.</u>)  Plaintiff did not complete leave of absence

11

paperwork and CAT terminated the plaintiff effective November 25, 2021. (Id., Def. Ex. BB).  Holmes testified that CAT terminated the plaintiff for violating the AWOL policy. (Id. Def. Ex. J, B. Holmes Dep. 47:5-8).

Based on the above events, plaintiff's amended complaint maintains several causes of action.  Count I advances claims for discrimination, retaliation, and failure to accommodate in violation of the ADA, while Count III mirrors these claims and alleges that CAT violated the PHRA.  Count II of the amended complaint asserts FMLA interference and retaliation claims.  At the close of discovery, CAT filed the instant motion for summary judgment.[6]  Having been fully briefed, this motion is ripe for disposition.

---

[6] Both parties filed statements of material facts in relation to CAT's motion for summary judgment. The Rules of Court for the Middle District of Pennsylvania ("Local Rules") require that a motion for summary judgment be "accompanied by a separate, short and concise statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1.  The Local Rules also require the opposing party to respond "to the numbered paragraphs set forth in the [moving party's] statement…as to which it is contended that there exists a genuine issue to be tried." Id.

Plaintiff, as the non-moving party, submitted additional material facts in numbered paragraphs "to identify the additional material facts [the defendant] failed to identify, and to highlight the abundant issues in dispute." (Doc. 34-1, at pp. 14-33).  Defendant objected to plaintiff's approach, but also preemptively responded to these paragraphs in a separate filing. (Doc. 35-1).

Courts in the Middle District of Pennsylvania have repeatedly held that Local Rule 56.1 does not permit a non-moving party to file an additional statement of material facts that does not respond to the moving party's statement because such efforts hamper the court's ability to identify contested facts expeditiously. See Williams v. Pennsylvania State Univ., 697 F. Supp. 3d 297, 310–11 & nn. 29, 34 (M.D. Pa. 2023)(collecting cases).  When opposing a motion for summary judgment, it is sufficient for a non-moving party to deny paragraphs in a moving party's statement of material fact with citations to the record advancing that genuine issues remain for a factfinder. See FED. R. CIV. P. 56(c)(1), 56(e); M.D. PA. L.R. 56.1. Nonetheless,

**Jurisdiction**

Because this case is brought pursuant to the ADA and FMLA, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Standard of Review**

The defendant has filed a motion for summary judgment.  Granting summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *See Knabe v. Boury* Corp., 114 F.3d 407, 410 n. 4 (3d Cir.1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard

---

the reasoned, appropriate approach to these circumstances is to overrule the defendant's objection and consider the entirety of the parties' filings, including the additional facts raised by the plaintiff and the defendant's responses to same. See Williams, 697 F. Supp. 3d at 312.

provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir.1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

14

"In employment discrimination cases, the summary judgment standard 'is applied with added rigor' because 'intent and credibility are crucial issues.' " Walden v. Saint Gobain Corp., 323 F.Supp. 2d 637, 641 (E.D. Pa. 2004)(quoting Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431 (3d Cir. 1997)). Moreover:

> Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff? Because this is clearly a factual question, summary judgment is in fact rarely appropriate in this type of case. Simply by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.

Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 509–10 (3d Cir. 1996)(internal quotation marks, citation, and explanatory parentheticals omitted).

**Analysis**

CAT seeks summary judgment on all causes of action asserted in plaintiff's amended complaint, that is, her various ADA, FMLA, and PHRA claims.  For ease of disposition, the court will address plaintiff's FMLA claims before moving on to her ADA and PHRA claims.[7]

---

[7] Counts I and III of plaintiff's amended complaint assert ADA and PHRA claims using the same legal theories. The court will address plaintiff's ADA and PHRA claims collectively under the same legal standard. See Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 220, n. 21 (3d Cir. 2024)("federal courts should continue to interpret the PHRA in harmony with the ADA."); Colwell v. Rite Aid Corp., 602 F.3d 495, 500, n. 2 (3d Cir. 2010)("[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA.").

### 1. FMLA Interference

FMLA entitles employees to take reasonable leave for medical reasons, specifically a "total of 12 workweeks of leave during any 12-month period…[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §§ 2601(b)(2), 2612(a)(1)(D). Leave taken pursuant to Section 2612(a)(1)(D), "may be taken intermittently or on a reduced leave schedule when medically necessary[,]" subject to other provisions regarding alternative positions, duties of the employee, and certification from a healthcare provider. 29 U.S.C. § 2612(b)(1).

FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). FMLA also grants employees a private right of action against employers who interfere with the exercise of FMLA rights. 29 U.S.C. § 2617.

To make a claim of interference under FMLA, a plaintiff must establish:

> (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017)(citing Ross v. Gilhuly, 755 F.3d 185, 191 (3d Cir. 2014))(further citation omitted).

CAT's position regarding plaintiff's April 2021 approval for intermittent leave is at issue in this case.  The statute deems medical certifications sufficient for intermittent leave where a healthcare provider for an eligible employee indicates: 1) the date the serious health condition commenced; 2) the probable duration of the condition; 3) the appropriate medical facts within the knowledge of the healthcare provider regarding the condition; 4) a statement that the employee is unable to perform the functions of the position of the employee; and 5) a statement of the medical necessity and expected duration for the intermittent leave. 29 U.S.C. § 2613(a), (b)(1)-(3), (b)(4)(B), (b)(6).

Relevant to this case, plaintiff's healthcare provider indicated in the April 2021 certification that she had suffered from insomnia since 2018 and that the condition would continue for an "undetermined" period. (Doc. 34-2, Pl. Ex. D, ECF p. 46).  Department of Labor regulations provide that "[a]n employer may request recertification no more often than every 30 days and only in connection with an absence by the employee," unless other regulations are applicable.  For example, in circumstances like the case before the court:

> If the medical certification indicates that the minimum duration of the condition is more than 30 days, an employer must wait until that minimum duration expires before requesting a recertification...

> In all cases, an employer may request a recertification of a medical condition every six months in connection with an absence by the employee.
>
> Accordingly, even if the medical certification indicates that the employee will need intermittent or reduced schedule leave for a period in excess of six months (e.g., for a lifetime condition), the employer would be permitted to request recertification every six months in connection with an absence.

29 C.F.R. § 825.308(b) (formatting modified).

Against that legal and regulatory backdrop, CAT argues that the summary judgment record fails to support an FMLA interference claim relative to plaintiff's termination. The court disagrees.

Plaintiff's termination letter indicates that she was fired for absences on November 8-11, 2021, because she called out sick without available leave. (Doc. 34-2, Pl. Ex. T). On the other hand, Brianna Holmes, CAT's HR manager, testified that plaintiff was approved for intermittent FMLA leave relative to her insomnia up until November 28, 2021, or six months after May 28, 2021. (Id., Pl. Ex. G, B. Holmes Dep. 25:16-29:15, 37:14-38:4, 51:22-52:19). This testimony contradicts correspondence sent to the plaintiff from another HR employee as to the date her approved leave expired. (Doc. 30, Ex. S, Ltr. From S. McDaniel 11/03/21 (indicating plaintiff's FMLA approval expired on October 15, 2021)).

Holmes also testified that plaintiff gave "no reason" for her absences from November 8-11, 2021. (Doc. 30, SOF, Def. Ex. J, 48:8-13). Plaintiff attested that

she took those dates off due to her insomnia, i.e., the reason she sought FMLA leave.[8] (Id., Pl. Ex. K, Pl. Aff. ¶ 12). Per plaintiff's testimony, she was told by CAT management that she was no longer eligible for FMLA leave as of that time, so she called in with a sick designation. (Doc. 34-2, Pl. Ex. A, Pl. Dep. 73:5-14).

In light of the above, there are genuine issues of material fact, conflicting accounts, and credibility issues to be resolved by a jury regarding plaintiff's FMLA interference claim arising from her termination.[9] The motion for summary judgment will be denied.

## 2. FMLA Retaliation

CAT also moves for summary judgment on plaintiff's FMLA retaliation claim. FMLA retaliation claims require proof of the employer's retaliatory intent and are assessed through the familiar burden shifting framework set forth in

---

[8] CAT argues that the court should not consider plaintiff's affidavit because it contradicts her prior deposition testimony, i.e., a sham affidavit. (Doc. 35, Def. Rep. Br. at 8). "The sham affidavit rule allows a court to disregard a later statement by a deponent on two conditions: the later statement contradicts the witness's deposition testimony, and the discrepancy between the two statements is neither supported by record evidence nor otherwise satisfactorily explained." SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 209 (3d Cir. 2022)(citations omitted). CAT, however, fails to cite the testimony it argues is contradicted by plaintiff's affidavit. A review of her deposition testimony indicates that plaintiff was not directly asked the reasons why she called off for the dates in November 2021, only what designation she used when she called off. (Doc. 34-2, Pl. Ex. A, Pl. Dep. 63:18-64:8, 73:5-14). Accordingly, the court will consider plaintiff's affidavit.

[9] CAT only argued that plaintiff's termination failed to support an FMLA interference claim. The court thus need not reach whether other events raised by the plaintiff support such a claim.

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[10]  Capps, 847 F.3d at 151 (citations omitted).

This framework first requires that plaintiff establish a *prima facie* case.  To do so, she must demonstrate that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)(citing Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508–09 (3d Cir. 2009)).

CAT concedes that plaintiff is protected under the FMLA and suffered an adverse employment action by her termination but asserts that plaintiff has not established that her termination was causally related to her exercise of FMLA rights.

To demonstrate a causal connection, a plaintiff generally must establish either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism

---

[10] Plaintiff argues that she has direct and circumstantial evidence to support her FMLA and ADA retaliation claims.  Direct evidence is evidence, which, if believed, would prove the existence of the fact in issue without inference or presumption. Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994)(citations omitted).  Even when viewing the record in a light most favorable to plaintiff, her arguments require some inferences to be made from the testimony and documentary evidence.  There is no email or memo, for example, that states plaintiff was terminated for using FMLA leave or for having insomnia.  Accordingly, the court will consider plaintiff's retaliation claims using the McDonnell Douglas framework, which applies where retaliation claims rely upon circumstantial evidence. See Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022).

following the protected conduct. See Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014)(citation omitted); see also Daniels, 776 F.3d at 196 (noting that causation may be established by suggestive timing or other circumstantial evidence that supports the inference of retaliation). "Whether a causal link exists 'must be considered with a careful eye to the specific facts and circumstances encountered.' " Budhun, 765 F.3d at 258 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279, n. 5 (3d Cir. 2000)).

In this case, plaintiff called off from her shifts using the FMLA designation in July, August, September, and October 2021 after being approved for at least six (6) months of intermittent leave effective at the end of May 2021.  Plaintiff's call-offs prompted CAT to schedule a pre-termination hearing on November 1, 2021. After plaintiff provided CAT its own paperwork at that hearing showing that her approved FMLA leave was effective from May 28, 2021 forward, CAT did not terminate plaintiff, but advised her that it considered her certification expired as of October 15, 2021.  CAT also indicated it would stop accepting FMLA call-offs without recertification.  On the other hand, CAT's HR manager has testified in this litigation that plaintiff's FMLA leave was in place until November 28, 2021, or after the date she was terminated.

Plaintiff then testified that she called off "sick" from November 8, 2021 to November 11, 2021 because she was told that her FMLA leave had expired.

21

Plaintiff has attested that she called off due to her insomnia and her attendance records reflect that she worked split shifts the week before.  From there, CAT scheduled a second due process hearing and ultimately suspended and then terminated the plaintiff for calling off on those dates.  Viewing the evidence in a light most favorable to plaintiff, she has demonstrated a causal relationship between invoking her FMLA rights and her termination.

After demonstration of a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Capps, 847 F.3d at 152.  CAT has articulated that it terminated plaintiff for being AWOL, i.e., violating its attendance policies. Accordingly, at the third stage of McDonnell Douglas, "[t]he burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for [retaliation]." Id.

"To defeat summary judgment… the 'plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.' " Canada, 49 F.4th at 347 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). An employee may meet her

burden by "painting the [employer's articulated reasons] as weak, implausible, contradictory, or incoherent." Id. (quoting Fuentes, 32 F.3d at 765).

Plaintiff has countered CAT's explanation with sufficient evidence that these proffered reasons were pretextual and that the real reason for plaintiff's termination was her use of FMLA leave. For example, plaintiff can point to the numerous contradictions in the record as to the dates plaintiff was approved for intermittent leave due to her chronic insomnia. At first, CAT provided plaintiff with documentation that she was approved for intermittent leave for a full year, from May 2021 until May 2022. Then, CAT ostensibly changed its policy to six-month approval periods. Even under that new policy, the plaintiff has pointed to evidence that she was told in writing that her FMLA leave would expire on October 15, 2021, which conflicts with testimony from CAT's HR manager that plaintiff was approved for intermittent leave until a date after the plaintiff was terminated.

Even setting aside disputes over the dates plaintiff was approved for FMLA leave and when that leave ended, plaintiff can point to other evidence that CAT did not apply its written attendance and punctuality policies in plaintiff's case as they were promulgated. (See Doc. 34-2, Pl. Ex. M, CAT Employee Handbook, ECF p. 147–48). Furthermore, plaintiff can point to CAT's internal HR e-mails showing that CAT formulated a plan, at least one month before she was

terminated, to make issues out of plaintiff's FMLA paperwork, mark her AWOL when she tried to use FMLA leave, and then terminate her unless she recertified for her chronic insomnia.  A reasonable, rational jury can look at all the evidence and conclude that CAT fired the plaintiff because she sought to use intermittent FMLA leave, not because she violated CAT's attendance policies.  Accordingly, CAT's motion for summary judgment will be denied as to plaintiff's FMLA retaliation claim.

### 3. Plaintiff's ADA/PHRA Retaliation Claims

Defendant also moves for summary judgment on plaintiff's ADA claims for disability discrimination, failure to accommodate, and retaliation.  ADA retaliation claims are evaluated at the summary judgment stage in the same manner as FMLA retaliation claims through application of the McDonnell Douglas framework.[11] Canada, 49 F.4th at 346 (citations omitted).  For ease of disposition, the court first addresses plaintiff's ADA retaliation claims.

To establish a *prima facie* case of retaliation in the ADA context, a plaintiff must prove: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a

---

[11] The ADA's anti-retaliation provision provides, in relevant part, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA.  42 U.S.C. § 12203(a).

causal connection between the employee's protected activity and the employer's adverse action." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567–68 (3d Cir. 2002)(citation omitted).

CAT argues that plaintiff did not engage in protected activity.  Under the law, good faith requests for reasonable accommodations are protected activities sufficient to support an ADA retaliation claim. See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003); see also Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010).

In support of its argument, CAT advances that "[a] request for FMLA leave is not a request for reasonable accommodation." (Doc. 29, Def. Br. in Supp. at 6). The Third Circuit Court of Appeals has indicated otherwise.  See Capps, 847 F.3d at 156–57 ("We recognize that a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA, see 29 C.F.R. § 825.702(c)(2), and to the extent that the District Court held otherwise, that was error.").  Thus, the first question to be resolved here is whether plaintiff's request for FMLA leave qualifies as a request for reasonable accommodation under the ADA based on the circumstances in the record.

Disability discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an…employee." 42 U.S.C. § 12112(b)(5)(A).  Pursuant to

25

the ADA, the term "reasonable accommodation" may include "job restructuring" and "part-time or modified work schedules[.]" 42 U.S.C. § 12111(9).  Separately, FMLA entitles employees to take reasonable leave for medical reasons, specifically a "total of 12 workweeks of leave during any 12-month period…[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. §§ 2601(b)(2), 2612(a)(1)(D). Such leave may be taken intermittently. See 29 U.S.C. § 2612(b).

Congress has also afforded the Secretary of the Department of Labor with authority to "prescribe such regulations as are necessary to carry out" the FMLA provisions cited above. 29 U.S.C. § 2654.  Those regulations contemplate that the ADA and FMLA are distinct statutes and ADA's "disability" and FMLA's "serious health condition" are different concepts. 29 C.F.R. § 825.702(a), (b).

Nonetheless, the two laws "interact with respect to a qualified individual with a disability." 29 C.F.R.§ 825.702(c)(1); see also 29 C.F.R. § 825.702(b)("[i]f an employee is a qualified individual with a disability within the meaning of the ADA, the employer must make reasonable accommodations, etc., barring undue hardship, in accordance with the ADA.  At the same time, the employer must afford an employee his or her FMLA rights.").  An example of this interaction in Department of Labor regulations has been specifically referenced by the Third

Circuit Court of Appeals as an instance where a request for FMLA leave may also qualify as a reasonable accommodation under the ADA. See Capps, 847 F.3d at 156–57.  That example provides:

> A qualified individual with a disability who is also an eligible employee entitled to FMLA leave requests 10 weeks of medical leave as a reasonable accommodation, which the employer grants because it is not an undue hardship. The employer advises the employee that the 10 weeks of leave is also being designated as FMLA leave and will count towards the employee's FMLA leave entitlement. This designation does not prevent the parties from also treating the leave as a reasonable accommodation and reinstating the employee into the same job, as required by the ADA, rather than an equivalent position under FMLA, if that is the greater right available to the employee.

29 C.F.R. § 825.702(c)(2).

It follows from this example that an employee approved for intermittent time off by her employer for a serious medical condition under the FMLA can also be reasonably accommodated by her employer with intermittent time off for her disability under the ADA.  One statute's "leave" may be another statute's "reasonable accommodation" in the form of a "modified work schedule" particularly where such leave is taken intermittently.

The court thus returns to the ADA statute.  An "employer must make reasonable accommodations to an employee's 'known' disability." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999)(citing 42 U.S.C. § 12112(b)(5)(A)).  Requests for reasonable accommodation do not need to be in

writing, or be made by the employee, and do not need to mention the ADA or formally invoke any "magic words." Id. Rather, the notice must only "make clear that the employee wants assistance for his or her disability." Id.

The summary judgment record reflects that plaintiff's healthcare providers certified to CAT in 2019, 2020, and 2021 that plaintiff suffered from chronic insomnia and needed intermittent days off from work to address the resulting issues caused by that condition when it flared up.  Plaintiff herself supplied these FMLA documents to CAT during a hearing on November 1, 2021.[12]

In 2019, 2020, and 2021, CAT agreed to provide the plaintiff with intermittent time off.  And although these medical certifications were supplied for FMLA purposes, plaintiff can advance a reasonable argument that these

---

[12] CAT cites plaintiff's deposition for the proposition that she "never made any request to CAT for any accommodation based upon any medical issues." (Doc. 30, SOF ¶ 4 (citing Ex. A, Pl. Dep. 28:10-15)).  Plaintiff's precise testimony states:

> Q. While you were employed at CAT, did you ever request to be accommodated for any of your medical issues?
> A. Can you repeat that and rephrase it so I understand it better?
> Q. Sure. While you were employed at CAT, did you ever request that CAT accommodate you for any of your medical conditions?
> A. I don't really understand the question.
> Q. Did you ever ask that CAT-- I'm just going to use an example so maybe I can jog your memory. Did you ever ask CAT to work different hours, do administrative work, anything like that to accommodate any of your medical issues?
> A. No.

(Id.)

Despite CAT's advocacy, plaintiff's testimony does not foreclose recovery on her ADA claims.

documents provided the requisite notice to CAT that plaintiff had a known

disability to be reasonably accommodated pursuant to the ADA.  Accordingly, the

motion for summary judgment must be denied on the issue of whether plaintiff

engaged in protected activity as part of a *prima facie* ADA retaliation case.

CAT also argues that plaintiff's retaliation case lacks a causal connection.

"[I]n cases where a plaintiff must illustrate a 'causal link' for purposes of

establishing retaliation, or show that certain conduct was 'used' as a basis for

employment decisions, a plaintiff may rely upon a broad array of evidence to do

so." Farrell, 206 F.3d at 283–84.

Although there is considerable other evidence to discuss here, such

discussion would be redundant.  As noted above, plaintiff provided CAT with

another copy of documents from her healthcare provider on November 1, 2021

reflecting that she suffered from chronic insomnia.  Plaintiff was fired that same

month.  This evidence is sufficient to demonstrate a causal connection and

demonstrate plaintiff's *prima facie* ADA retaliation case.

The rest of the McDonnell Douglas analysis for plaintiff's ADA retaliation

claim plays out much like the second and third steps of plaintiff's FMLA retaliation

claim.  The court has addressed CAT's legitimate, nondiscriminatory reasons

above and plaintiff's evidence in response to show pretext and need not reiterate

that evidence here.  Consequently, the motion for summary judgment regarding plaintiff's ADA retaliation claim will be denied.

### 4. Plaintiff's ADA/PHRA Discrimination Claims

The court turns next to plaintiff's other ADA claims.  Regarding plaintiff's ADA discrimination claim, the statute makes it unlawful for a covered entity to "discriminate against a qualified individual on the basis of disability in regard to…discharge of employees…and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To prove disability discrimination, plaintiffs must demonstrate: (i) they have a disability within the meaning of the ADA; (ii) they are otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (iii) they have suffered an otherwise adverse employment decision as a result of discrimination. Morgan, 114 F.4th at 221 & n. 23 (citing Eshleman v. Patrick Indus., Inc., 961 F.3d 242, 245 (3d Cir. 2020); Taylor, 184 F.3d at 306 (quotation marks and bracketing omitted).

In its brief, CAT concedes that: 1) plaintiff has a disability within the meaning of the ADA due to her insomnia; and 2) plaintiff was qualified to perform the essential functions of the position of fixed-route operator with or without reasonable accommodations. (Doc. 39, Df. Br. in Supp. at 7).  Despite these concessions, CAT disputes whether plaintiff was known to be disabled prior to

this litigation. (Id.)  CAT argues that plaintiff failed to request reasonable accommodation and that her requests for intermittent FMLA leave over the years to address her insomnia symptoms should be disregarded. (Id.)  Per CAT, it essentially "had no knowledge of [p]laintiff's need for a reasonable accommodation, nor did it consider [p]laintiff disabled." (Id. at 8).  CAT thus takes the position that plaintiff was terminated for legitimate, non-discriminatory reasons, that is, plaintiff exhausted her sick leave, did not complete FMLA or internal leave-of-absence paperwork on a timely basis, and otherwise called off from work under circumstances CAT considered to be AWOL. (Id.)  Plaintiff counters by arguing that she has evidence to demonstrate disability discrimination and that CAT's reasons for her termination were pretextual.[13]

To survive summary judgment on a disability discrimination claim, a plaintiff must present a *prima facie* case and establish that she was: 1) disabled; 2) subject to adverse employment action; 3) qualified for her position; and 4) that

---

[13] Plaintiff also argues that she has direct evidence of disability discrimination.  Demonstration of discrimination through direct evidence is a "high hurdle." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 269 (3d Cir. 2010).  As indicated in footnote 10, there is no evidence of an email or a statement to the plaintiff that she was fired for using FMLA leave or because she suffers from chronic insomnia.  To the extent that plaintiff's evidence requires inferences to be made, a plaintiff may assert an ADA claim through circumstantial evidence. See Shaner v. Synthes, 204 F.3d 494, 503 (3d Cir. 2000)(citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 n. 4 (3d Cir.1999)); Wilkie v. Luzerne Cnty., 207 F. Supp. 3d 433, 436 (M.D. Pa. 2016).  Cases with circumstantial evidence of discrimination proceed under the McDonnell Douglas framework. See Walton v. Mental Health Ass'n. of Se. Pa., 168 F.3d 661, 668 (3d Cir. 1999).

the adverse employment action was because of her disability. Fowler v. AT&T, Inc., 19 F.4th 292, 299 (3d Cir. 2021)(citing Walton, 168 F.3d at 668).

For the sake of completeness, the court unwinds CAT's conflicting arguments about the first element, whether plaintiff has a disability. A plaintiff is disabled within the meaning of the ADA "if they: (1) have 'a physical or mental impairment that substantially limits one or more' of their 'major life activities'; (2) have 'a record of such an impairment'; or (3) are 'regarded as having such an impairment.' " Morgan, 114 F.4th at 221 (quoting 42 U.S.C. § 12102(1)). "Congress included 'record of' disability claims in the ADA to ensure that employees could not be subjected to discrimination because of a recorded history of disability." Eshelman v. Agere Sys., Inc., 554 F.3d 426, 436–37 (3d Cir. 2009). A plaintiff can make a "record of" claim for disability discrimination by proving she had a history of an impairment that substantially limited a major life activity. See id. (citation omitted). Moreover, the "duration of impairment *is not dispositive* of whether someone is disabled." Morgan, 114 F.4th at 223 (emphasis in original). Rather, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).[14]

---

[14] The statute does not define the term "major life activities." Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 512 (3d Cir. 2001). The Equal Employment Opportunity Commission, however, has been afforded authority by Congress to "issue regulations" to "carry out" the employment

Taking a step back for a moment, CAT has itself proffered evidence that it possessed multiple medical certification forms in 2019 and 2020 stating that plaintiff suffered from "chronic insomnia with acute exacerbation." (Doc. 30, SOF, Def. Exs. B-C).  Per those forms, which were signed by a doctor, plaintiff's condition did not cause her to be incapacitated for a single, continuous period of time, but rather, would cause "episodic flare-ups periodically preventing the employee from performing [her] job functions[,]" i.e., being able to drive a bus safely. (Id.)  Such issues were estimated to occur approximately five (5) times per month for a duration of nine (9) hours or one (1) day. (Id.)

Moreover, even though there is a dispute in this matter as to when and under what circumstances CAT possessed plaintiff's 2021 medical certification form, there is no dispute that CAT had this document prior to plaintiff's termination.  Although completed by a different provider than the first two certifications, the 2021 document indicates that plaintiff: 1) continued to suffer from a chronic condition; 2) "periodically needs day of work [sic] to get rest as needed for insomnia" ; and 3) was prescribed trazodone nightly. (Doc. 34-2, Pl.

---

provisions of the ADA through regulations. 42 U.S.C. § 12116; see also Ramsay v. Nat'l Bd. of Med. Examiners, 968 F.3d 251, 260, n. 12 (3d Cir. 2020).  EEOC regulations provide that "major life activities" include "sleeping" and "performing manual tasks, seeing, hearing… reading, concentrating, thinking, communicating, interacting with others, and working[.]" 29 C.F.R. § 1630.2.

Ex. D)(emphasis by the provider).  Per that provider, plaintiff's condition had

started in 2018 and was expected to last for an undetermined period. (Id.)

As to the fourth element of plaintiff's *prima facie* case, that the adverse

employment action was because of her disability, the plaintiff has pointed to

evidence demonstrating that element.  Plaintiff produced the above-discussed

medical certification detailing her insomnia treatment to Brianna Holmes, CAT's

HR manager, on November 1, 2021 during a hearing.  (Doc. 30, SOF, Def. Ex.

Q, CAT Memo 11/03/2021). Holmes then credited ten (10) of plaintiff's call-offs to

use of intermittent FMLA leave, i.e., to address her chronic insomnia. (Id.)

Holmes testified that she became aware of plaintiff's medical condition at the

time of that hearing. (Doc. 34-2, Pl. Ex. G, B. Holmes Dep. 60:21-61:8).  And

Holmes had given a presentation to plaintiff's union in June 2021 regarding

CAT's driver fatigue prevention program. (Doc. 30, SOF, Def. Ex. R).

Subsequently, plaintiff's termination letter indicates that she was fired for

absences on November 8-11, 2021 because she called in sick without available

leave. (Doc. 34-2, Pl. Ex. T).  Plaintiff attests that she called off sick on the

November dates due to her insomnia but did not use the FMLA designation

because Holmes told her she was no longer FMLA eligible at that time. (Doc. 32-

4, Pl. Ex. K, Pl. Aff. ¶¶ 12-13).  As noted throughout this memorandum, Holmes

testified that plaintiff was approved for intermittent leave until a date after the

34

plaintiff was terminated. (Doc. 34-2, Pl. Ex. G, B. Holmes Dep. 25:16-29:15, 37:14-38:4, 51:22-52:19).  With the above evidence, plaintiff has demonstrated a *prima facie* case that she suffered disability discrimination.

As with the retaliation claims, the burden of production then shifts to the defendant to provide a legitimate, non-discriminatory reason for its actions. Fowler, 19 F.4th at 299.  CAT's articulated reasons for plaintiff's termination are noted above.

To prevail at summary judgment, the plaintiff must then show that she has evidence that CAT's reasons are merely a pretext. Id.  Moreover, "if a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her *prima facie* case to survive summary judgment." Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013)(citations omitted).

Plaintiff has made her *prima facie* retaliation and discrimination cases with evidence of various contradictions in the record, including contradictions between Holmes's testimony and the documentary evidence.  A reasonable, rational jury can look at all the evidence and conclude that CAT fired the plaintiff because she suffers from chronic insomnia, not because she violated CAT's attendance policies.  Accordingly, CAT's motion for summary judgment will be denied as to plaintiff's disability discrimination claims.

35

### 5. ADA/PHRA Failure to Accommodate

In conjunction with the above arguments, CAT also requests summary judgment on plaintiff's failure to accommodate claim.  A plaintiff bringing an ADA failure-to-accommodate claim must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." Capps, 847 F.3d at 157 (quoting Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 (3d Cir. 2006)(footnote and additional citations omitted)).  The evidence regarding these elements, along with the evidence relative to the other steps in the McDonnell Douglas framework have been sufficiently addressed above.  There are genuine issues of fact to be resolved by a jury regarding plaintiff's failure to accommodate claim and thus CAT's motion for summary judgment on this claim will be denied.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment will be denied.  An appropriate order follows.

Date: 10/10/24

_____
JUDGE JULIA K. MUNLEY
United States District Court

36